# THE MAYOR AND CITY COUNCIL OF BALTIMORE

## vs.

## SAM W. PATTISON, CLERK OF THE CRIMINAL COURT OF BALTIMORE CITY.

### Costs in Criminal Cases—Liability of City.

In a civil suit, while the judgment determines the liability of the parties for costs as between themselves, they are directly liable to the clerk of court for the services which they have respectively caused him to perform.      p. 68

A judgment of conviction in a criminal case subjects the defendant to legal responsibility for the costs as between himself and the State, but it does not affect the primary right of the clerk as to the collection of his fees.      p. 68

While the State cannot be charged with court costs, or sued for their recovery, there is no corresponding exemption in favor of the City of Baltimore and of the counties, such as to relieve them from the duty of compensating clerks of the courts administering justice within their limits for services required to be rendered in the public interest.      p. 68

The City of Baltimore is liable to the Clerk of the Criminal Court on account of fees for services rendered by him in the performance of his official duties, such liability to the clerk on the part of the City and of the counties, respectively, having been so long and so universally recognized and acted upon as to have become a part of the common law of the State.      p. 68

That some part of the fees claimed by the clerk were taxable as costs in criminal cases is immaterial, except in so far as such costs may have been paid to him by the defendants, who became liable therefor upon conviction.      pp. 66, 67

The City cannot refuse to pay any part of the fees of the clerk on the ground that any excess of fees received by him over his salary and the expenses of his office is required by the Constitution to be paid over to the State Treasurer, and consequently will not revert to the City.      pp. 68-70

Syllabus.

That the City has paid to the clerk, on account of his claim for fees, sufficient to pay his salary and the expenses of his office, and that consequently any further sum claimed by him will be paid to the State Treasurer, does not necessitate that a suit to recover such sum be brought by the State, since the fees are not payable to the State until after their collection by the clerk.                                                                                        p. 70

*Decided February 4th, 1920.*

Appeal from the Baltimore City Court (SOPER, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Roland R. Marchant, City Solicitor,* and *S. S. Field,* for the appellant.

*Alexander Armstrong,* with whom was *Ogle Marbury* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court:

The Clerk of the Criminal Court of Baltimore City sued the Mayor and City Council of Baltimore to recover fees for services rendered by the clerk in the performance of his official duties. From a judgment in the clerk's favor for the sum of $19,234.91 the city has appealed. The period during which the fees sued for were charged began with the September Term, 1916, of the Criminal Court and extended to the end of the May Term, 1918, which was the last completed term before the institution of the suit. The total amount of the fees charged to the city for that period was $47,920.15, but credit was given for certain payments, aggregating $28,-685.24, made by the city to the clerk to meet the actual expenses of his office, and the balance left after this deduction is the amount for which the judgment was rendered. The

fees claimed were for the following classes of service: entering on the grand jury dockets commitments from the police justices, issuing subpoenas for witnesses to testify before the Grand Jury, filing reports from the various station houses, issuing certificates to grand and petit jurors and to witnesses, filing and docketing indictments, issuing warrants for the accused, arraigning prisoners, entering continuances, issuing subpoenas for witnesses to testify at trials, swearing the juries, issuing attachments for witnesses, defendants and bailors, and recording the minutes of the Court. During the period covered by the present claim costs were paid by defendants in criminal cases to the total amount of $3,085.85. These costs, of course, were not included in the clerk's claim against the city. It is conceded that the city was liable for the sum of $9,763.20, included in the claim and representing the clerk's taxed costs in cases in which the defendants were acquitted or fined not exceeding fifteen cents, there being statutory provision that in such event the accused shall be exempted from the payment of costs (Code, Art. 24, Sec. 7). But as to the balance of the fees sought to be recovered the liability of the city is disputed.

The position of the city is stated in a special plea, to which a demurrer was filed and sustained. The plea avers:

"That the Clerk of the Criminal Court of Baltimore City is a State officer, and not a city officer; that the Mayor and City Council of Baltimore is not a party to a criminal proceeding; that the said clerk in performing his duties in criminal proceedings performs no service for the Mayor and City Council of Baltimore, but performs said services either for the State or for the accused; and that there is no law which requires the Mayor and City Council of Baltimore to pay the fees of the Clerk of the Criminal Court except where the accused is acquitted or fined only fifteen cents; and that the defendant has paid the fees of the Clerk of the Criminal Court in all such cases."

As indicated by the plea just quoted, the city's theory is that the fees sued for were all taxable as costs in the criminal cases disposed of during the period under consideration. It is evident, however, that some of the fees were for services which could not be referred to particular prosecutions. Certainly the fees for recording the minutes of the Court were not taxable as trial costs, and there are other fees which cannot properly be attributed to any individual cases. But a large proportion of the claim sought to be collected in this suit is made up of fees chargeable and taxed in cases in which the defendants were convicted and made liable for the costs. The real question in the case is whether such costs are payable by the city to the extent to which they are not paid by the convicted criminals.

It has been the immemorial custom of the clerk to present and the City to pay such claims as the one now in litigation. The same long-established practice has existed in the counties for the collection of similar fees from the County Commissioners. There is no statute which imposes this liability, but it appears to have been recognized as necessarily incident to the governmental responsibility of the Mayor and City Council of Baltimore and of the commissioners of the respective counties. It is for the enforcement of law and order in the political sub-divisions over which those municipal authorities have control that criminal prosecutions are conducted. The grand juries which find, and the petit juries which try, indictments for violations of the law are drawn from and supported by the city or the county in which the crimes are alleged to have been committed. The formal charges in the indictments are made by the "Grand Jurors of the State of Maryland in and for the body of" Baltimore City or the county in which the prosecution thus originates. It is in furtherance of the important public purposes of such proceedings that the services of the clerk in connection with criminal cases must be rendered. In performing the duties required of him by law, in order that

persons accused of crime may be regularly brought to trial, he acts primarily on behalf of the public. Ordinarily the clerk is entitled to collect his fees from the party at whose instance he rendered the services for which the fees are chargeable. In a civil suit, while the judgment determines the liability of the parties for costs as between themselves, yet they are directly liable to the clerk for the services which they have respectively caused him to perform. A judgment of conviction in a criminal case subjects the defendant to legal responsibility for the costs as between himself and the State, but it does not affect the primary rights of the clerk as to the collection of his fees. While the State cannot be charged with the costs or sued for their recovery, there is no corresponding exemption in favor of the city and of the counties that relieves them from the duty of compensating the clerks of the courts administering justice within their limits for services required to be rendered in the public interest. The law expressly authorizes the clerks to charge for such services as those upon which the pending claim is based, and the fees to which they are entitled for their various official acts are definitely prescribed. The provision for such charges would have been futile with respect to most prosecutions in which convictions are secured if there were no primary liability to the clerk on the part of the city or county and he were compelled to depend for his fees upon the individual responsibility of the convicts. The considerations we have suggested are sufficient to account for the fact that the right of the clerk to collect from Baltimore City and the counties, respectively, accounts like the present one for fees in criminal cases, has been so long and so universally recognized and acted upon as to become a part of the common law of the State.

The main objection of the city to the payment of the fees claimed from it by the appellee is that the money thus obtained would be more than sufficient to meet the expenses of

his office, and that the surplus would not revert to the city, from whose funds it was derived, but would be payable into the State treasury.   There are constitutional provisions to the effect that the compensation of clerks and their "assistants and office expenses shall always be paid out of the fees or receipts of the offices, respectively" (Art. III, Sec. 45), and that "every person holding any office under the Constitution or laws of the State (except justices of the peace, constables and coroners) whose pay or compensation is derived from fees or moneys coming into his hands for the discharge of his official duties," shall keep an account of such fees and shall return a copy thereof annually to the Comptroller of the State for his inspection, and that every such officer, "when the amount received by him for the year shall exceed the sum which he is by law entitled to retain as his salary or compensation for the discharge of his duties, and for the expenses of his office, shall yearly pay over to the Treasurer of the State the amount of such excess, subject to such disposition thereof as the General Assembly may direct" (Art. XV, Sec. 1).   These provisions make no distinction as to the various sources from which the fees of the offices referred to may be derived, but require any surplus after the payment of salaries and expenses to be paid to the State Treasurer without reference to the question as to whether the money may have been collected in part from the city or county.   To the extent to which fees paid by the municipality out of funds raised by taxation contribute to the creation of a surplus payable into the treasury of the State, it is urged that the local taxpayers are unequally and unjustly burdened for the benefit of the State at large.   This contention might be made the basis of an appeal to the Legislature to correct any inequalities of the nature complained of which may be produced by the operation of the present system.   The General Assembly has power to accomplish the purpose of such an appeal under the authority reserved

to it by the Constitution to direct the disposition of the excess funds received by the State Treasurer from the clerks. But the decision of the courts as to the right of the clerks to collect their fees and as to the sources from which they can be derived cannot be affected by a consideration of the propriety of existing provisions of law as to the application of the fees after they are received.

The city does not object to the use of its funds to supplement the receipts of the appellee from other sources in so far as may be necessary to pay his salary and the expenses of his office, and it has therefore voluntarily made the recent payments to which we have referred. These payments, however, unless they are to be regarded as being on account of fees legitimately due the Clerk, are not authorized by law to be made or accepted. If the fees collectible by the appellee were inadequate to meet the expenses of his office, he could not, under the present laws, require the city to supply the deficiency. It could only be supplied by the State Treasurer, out of the surplus funds received from other clerks of courts, in Baltimore City, as provided by statute, (Code, Art. 17, Sec. 12), but such relief is made available upon the theory that the Clerk is regularly collecting so far as practicable the fees to which he is entitled. The only question, therefore, which we are now authorized to decide is whether the appellee is entitled to the payment by the city of the fees he is claiming in this suit, and for the reasons already stated we are of the opinion that such a right exists and is legally enforceable.

It was argued on behalf of the city that since it has paid the appellee amounts sufficient to meet the expenses of his office, and the sum now sought to be recovered would constitute a surplus which would be payable to the State Treasurer, the suit should have been brought, if at all, in the name of the State. This theory cannot be sustained. The fees are not payable to the State until they have first been collected

by the clerk and the existence of a surplus in his hands has thus been determined.

The various contentions of the city were presented on demurrer, by exceptions to evidence and by prayers, as to all of which the Court below ruled consistently with the conclusion we have stated.

Three of the prayers questioned the scale of charges adopted for several classes of the fees claimed, but no reference was made to these prayers in the brief of the city in this Court. The fees in question appear to be justified by Sections 6 and 12 of Article 36 of the Code, relating to the fees of clerks and other officials.

*Judgment affirmed, with costs.*